## BREACH OF COVENANT NOT TO ENGAGE IN BUSINESS.

Circuit Court of Cuyahoga County.

JOHN A. ARNOLD v. WLADYSLAW BUKOWSKI ET AL. ·

Decided, June 3, 1912.

*Covenant Not to Engage in Business—Damages Instead of Injunction Allowed, When.*

In an action by the purchaser of a grocery store against the person from whom he bought it under a covenant that the latter would. not engage in the grocery business within one mile of the store sold, to enjoin the violation of said covenant and for damages for its breach, if it appear that pending the suit the purchaser has given up his store and ceased business, and is financially unable to continue business, an injunction against the defendant will not be allowed, but damages for violation of the covenant will be allowed the plaintiff.

*Henry Du Lawrence,* for plaintiff in error.
*Hidy, Klein & Harris,* contra.

MARVIN, J.; NIMAN, J., concurs; WINCH, J., not sitting.

There are painful features about this case. The testimony of the parties to the case is such that one is almost forced to the conclusion that somebody has committed perjury wilfully. We can by no possibility know certainly who has committed such perjury, but there can be no doubt that in answer to some of the questions put to Amelia Bukowski she answered what was not true. This is certainly true in reference to the purchase by her of the store in which she is now in business. The fact that she gave this testimony, which is not true, tends to shake our faith in all her testimony where it is to her interest to have the facts appear as she states them.

We do not regard it as necessary to here give the details of this litigation. If the written instrument which is in evidence and is signed by the defendants, Wladyslaw Bukowski and Amelia Bukowski, is the contract into which they entered with the plaintiff, then that contract has been violated by these two

defendants, and although we can't certainly know whether the
written instrument which is in evidence is exactly as it was when
it was signed by these parties, we think the evidence is such that
we should say, and we do say, that we find that the contract read
when signed as it reads now. True, there are some things about
its appearance that give color to the claim made by the de-
fendants that the restrictive clause in this instrument was writ-
ten after the instrument was signed and delivered to the plaint-
iff, but on the whole we think the evidence is not sufficient to
justify us in saying that the instrument is not now as it was
when it was signed, and that being so, the Bukowskis' were under
contract, for which they received a valuable consideration, not
to enter into the grocery business within one mile of the business
which they sold to the plaintiff on the 14th day of November,
1911, yet, on the 18th day of February, 1912, they bought out a
grocery from John Woisvill in the immediate neighborhood of
the grocery which they had sold to the plaintiff, and went right
on with the grocery business which they had thus bought and
there continued in that business to the present time, all in viola-
tion of their contract with the plaintiff.

At the time this suit was begun and at the time of its trial in
the court of common pleas, the plaintiff was in business at the
place which he bought from the Bukowskis; he is not now in
business there. He says that if he shall be successful in this liti-
gation, he expects to go on with the business there, or rather to
again open up the business which he has been compelled to give
up. We do not think he can ever open up this business success-
fully. We think, in short, that so far as carrying on a grocery
business in the neighborhood where this business was carried on,
he is down and out.

We think, further, that he has suffered damage at the hands
of the Bukowskis by their violation of their contract with him,
but not to the degree that he and his counsel think that he has
suffered. In his earnestness for his client, counsel for the plaint-
iff has brought himself to think that the defendant Amelia Bu-
kowski is Michiavellian in her designs and ability to plot for the
success of her schemes, and that she had in mind from the be-
ginning that she would secure what money the plaintiff had and

then, not only destroy his business, but as counsel expresses it, ruin the plaintiff, and that she has succeeded in preventing him from doing any business, and that he would have done a profitable business but for her plotting and scheming.

In this we think counsel for the plaintiff somewhat overstates the results to the plaintiff from the acts of the defendants Bukowskis. The plaintiff was a stranger in the city of Cleveland when he bought this business; he had no knowledge of the grocery business, and it was a mistake for him to have gone into the business. It took almost all his money to pay the Bukowskis for the property and the good will of the business, in addition to the note for $350 which he gave them as a part of the consideration, which note is still held and owned by them, no part of it having been paid.

With the small amount of money which he had left, even if he had been experienced in the grocery business and had been acquainted with the wholesale dealers, it is very doubtful whether he could have gone on with a profitable business. He thinks he made $500 the first month he was in business. We think he has no such means of estimating the cost of the goods which he sold and the profits therefrom which would accrue on such goods, to know that he has made any such profits, and that he must be mistaken in putting the profits at that amount. He says that in his second month he lost some money. During his second month the defendants weren't in business in his neighborhood, so that it was not because of the violation of the contract on their part that he did business at a loss the second month. It was three weeks after the close of his second month in business before the Bukowskis went into business, and during all that time he was losing money. His credit became bad with the wholesale dealers, not because of any dishonesty on his part, for we see nothing in his conduct in this matter in any way to indicate any dishonesty, but from the fact that his credit was bad with the wholesale dealers, and it was bad because his business was bad; it became very hard for him to supply himself with such goods as his customers needed, and we think it very natural that, as is said by some of the witnesses, they ceased to do business at his store, because they were unable to obtain the goods they wanted.

It is said in answer to this that though the plaintiff was losing money for the seven weeks or more immediately preceding the entering into business by the defendants in violation of their contract, yet this was because the defendants, especially the defendant Amelia. Bukowski, was inducing customers to leave the store of the plaintiff, and because she·induced an employee of the plaintiff who had been her employee, and who gave his special attention to the meat business, to leave the plaintiff's employment. We think another reason, to-wit, the one given by the employee himself, that he failed to get his wages, was sufficient reason why he might naturally have left the employment of the plaintiff, and not only that but, though good morals and good faith should have prevented Mrs. Bukowski from seeking to divert trade from the plaintiff or seeking to induce any employee of his to leave his employment, yet there was nothing in the contract to prohibit her doing this other than the prohibition against her or her husband going into business themselves.

The fact that the defendants went into business in violation of their contract conduced to the failure of the plaintiff to successfully carry on his business, but we think it only hastened the time when he was sure to have to go out of business. Another store of a similar kind had been started in the immediate neighborhood shortly after he went into business, which tended, of course, to take away his trade. Our sympathies are with the plaintiff; his misfortunes in the grocery business are attributable in part to his want of experience, his want of acquaintance in the neighborhood, his want of capital, and in part to the violation on the part of the defendant Bukowskis of the contract which they made with him and for·which they were paid.

It is impossible for us to fix exactly what part of the damages which he suffered resulted from the violation of the contract by the Bukowskis; we can only make an estimate. We know that many of the customers who had been customers of the Bukowskis when they kept the store which the plaintiff bought, and who were customers of the plaintiff when he first went into business. are now customers of the Bukowskis, but a considerable number of them had already quit buying from the planitiff some weeks before the Bukowskis opened up in their new place of business,

and we have reached the conclusion, first, that the plaintiff is not now entitled to an injunction against the defendants, though as the facts were when this suit was begun, he was entitled to such injunction, and if we felt that the failure of the plaintiff to be able to go on in business was chiefly due to the violation on the part of the Bukowskis, perhaps the injunction should be allowed even as the facts now are, although by the direct terms of the restriction he would not be entitled to it, because the restriction was to only cover the buyer while he was in business at the place which he bought from them. But as already said, we think he can not carry on a business there successfully even though the defendants be enjoined, and so no injunction will be allowed, to prevent the defendants from continuing their business, but an order will be made directing that the note given by the plaintiff to the defendants be canceled and delivered to him and the defendants perpetually enjoined from asserting any claim under that note. In addition to this, we award to the plaintiff additional damages in the sum of $500, and the costs of this action will be adjudged against the defendants Wladyslaw Bukowski and Amelia Bukowski. If it shall appear that the damages allowed are somewhat large as compared with the loss of profits which the plaintiff might probably have made, the answer is that the defendants have brought this upon themselves by their own wrongdoing, and are entitled to no sympathy whatever from the court.